UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARA WORTHINGTON,

                Plaintiff,

v.                                      Case No. 13-cv-10249
                                      Hon. Gershwin A. Drain

BRIGHTON FORD, INC.,

                Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#40]**

## I.    INTRODUCTION

On January 21, 2013, Kara Worthington ("Plaintiff"), filed the instant action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS § 37.2101 *et seq.* against her former employer, Brighton Ford, Inc. ("Defendant"), a car dealership located in Livingston County, Michigan.

Before the Court is the Defendant's Motion for Summary Judgment, filed on October 16, 2013. This matter is fully briefed and the Court heard oral argument on February 4, 2014. In the present motion, Defendant argues Plaintiff's Title VII and ELCRA hostile work environment claims fail because it took prompt remedial action to address Plaintiff's complaint of sexual harassment; nor is there any evidence that Plaintiff suffered further harassment during the remainder of her employment. Defendant also asserts that Plaintiff's Title VII and ELCRA retaliation claims fail because there was no adverse employment action, and in any event, Plaintiff cannot demonstrate

any connection between the alleged adverse employment action and her sexual harassment complaint.

Upon careful consideration of the parties' written submissions, exhibits and oral presentations, the Court finds there are no questions of fact as to Plaintiff's hostile work environment claims under Title VII and the ELCRA, therefore the Court will grant summary judgment in favor of Defendant on these claims. However, the Court concludes that questions of fact relevant to the resolution of Plaintiff's retaliation claims exist. As such, the Court will deny Defendant's motion with respect to these claims.

## II.    FACTUAL BACKGROUND

Plaintiff began working for Defendant as its Business Development Center Manager in May of 2008. Defendant's Vice President, Scott Spitler, recruited Plaintiff because he had previously worked with her and he told his brother, Todd Spitler, Defendant's General Manager, that he believed Plaintiff would be a good fit for the job. Plaintiff's duties included supervising the Business Development Center representatives, assisting with potential customer inquiries by phone or email, coordinating sales and marketing events, and compiling various reports for the dealership. Both Todd and Scott Spitler were satisfied with Plaintiff's job performance and she received a performance-based raise after her first year of employment.

Beginning in 2009, Plaintiff claims that Defendant's Assistant New Car Sales Manager, John Duley, subjected her to dozens of sexual remarks and unwelcome advances. For example, in December of 2010, Duley asked Plaintiff, "[i]f I put a bow around my penis, would you accept my gift?" Duley would also isolate Plaintiff and ask her to have a drink with him or stay in a hotel with him. On other occasions, he would lure Plaintiff into an empty office and try to touch and hug her.

During these occasions, Plaintiff always informed Duley that his behavior was unwelcome and unacceptable.

Plaintiff claims that Duley's conduct interfered with her job. In order to prepare essential reports, Plaintiff was required to obtain certain information from Duley, however if Duley became angry with Plaintiff, he would not give her the information she needed to prepare her reports. Therefore, Plaintiff maintains she had to endure unwanted and repeated sexual invitations, and sexual remarks so as not to upset Duley, whose failure to supply her with information could result in a negative assessment of Plaintiff by Ford Motor Company.

On January 10 and 11, 2011, Plaintiff learned that Duley had been harassing at least three other female employees with unwelcome remarks and advances. These employees were Cara Gosselin, a Business Development Center Associate, Andrea Milhizer and Taylor Adams. Adams is Plaintiff's daughter and began working for Defendant as an intern in February of 2010. Once Plaintiff learned that her daughter had also been subjected to Duley's remarks, she submitted a formal complaint of sexual harassment to Scott Spitler on January 12, 2011. Scott Spitler then contacted his brother, Todd, who was on a business trip in Florida, and reported his conversation with Plaintiff.

Scott Spitler then met with Duley and advised him of Plaintiff's sexual harassment complaint. Spitler advised Duley that Plaintiff indicated he had invited her out for drinks and to join him at a local hotel where he was staying. Spitler also confronted Duley about the "bow" remark. Spitler claims that Duley admitted to the invitations, but denied making the "bow" comment. However, at his deposition, Duley testified that he did in fact make this comment to Plaintiff. Spitler informed Duley that he was not to talk to other employees about anything other than work, sports or the weather.

-3-

After his meeting with Duley, Spitler informed the Plaintiff that he had spoken with Duley and instructed him to refrain from making unwanted sexual remarks and invitations.   Plaintiff thereafter performed all of her tasks for the day and left around 6:30 p.m.   Plaintiff removed all of her personal belongings from the office.   At her deposition, Plaintiff testified that:

> Q:   Why did you do that, why did you remove those things?
> A:   I was very upset of how the situation was handled.   I felt that it was a slap on the face and I knew I wasn't going to come in the next day and I was going to make a stand that I thought it was handled improperly and I was afraid I was going to be fired.
> Q:   Okay.  What does that have to do with taking your things?
> A.   I didn't want to have to go back.

*See* Def.'s Mot.  for Summ.  J., Ex.  D at 128.

The next day, Scott Spitler and Tina Devlin, Defendant's Office Manager, began interviewing the female employees who Plaintiff identified as also being subjected to Duley's unwanted sexual advances and remarks during her January 12, 2011 meeting with Spitler.  This was the first sexual harassment investigation Defendant had conducted.  Defendant had no written guidelines for conducting an investigation of this type.  Scott Spitler did not take any notes during the interviews, which each lasted only a few minutes.

Scott Spitler first interviewed Michelle Jaskolski, who indicated that while Duley had invited her out for drinks and to stay with him at a hotel, he never said or did anything inappropriate to her. Next, Cara Gosselin was interviewed.  She was asked whether Duley had ever invited her to spend the night in a hotel and whether she found that inappropriate; she answered yes to both inquiries. Scott Spitler also interviewed Katie Gearhart, Sherri Secord and Andrea Milhizer.  All of them stated that Duley approached them with hotel or drink invitations, however none felt his invitations were inappropriate.  After the interviews, Scott and Todd Spitler determined that Duley should be suspended for a week without pay.  They also decided to adjust Duley's job duties to minimize his

contact with Plaintiff.  At his deposition, Todd Spitler testified that Duley was suspended rather than terminated because "there was more work that had to be done."  *See* Plf.'s Resp., Ex.  1 at 78.

On January 13 and 14, 2011, Plaintiff took allowable personal days because she was an "emotional wreck" and she did not want to face Duley.  On January 13, 2011, Todd Spitler called her to inform her that Duley had been suspended for one week and, according to Plaintiff, demanded that she return to work.  Although Plaintiff believed a one-week suspension to be inadequate, she agreed to return to work on Monday, January 17, 2011.

When Plaintiff returned to work on January 17, 2011, she claims she was denied access to websites required to process applications and to perform her essential job functions.  Both Todd and Scott Spitler testified that she was denied access because she packed up her belongings when she left the office on January 12, 2011, and they were unsure if she was going to return to work.  They further claim that it is Defendant's policy to disable computer access to employees when it is not clear whether they would be returning to work.  However, this policy is not memorialized in a writing.  When Plaintiff informed Scott Spitler that she could not access necessary websites to perform her job duties, Spitler told her that he would restore her access.

Also on January 17, 2011, Scott Spitler and Plaintiff had a meeting wherein Spitler informed Plaintiff that "this matter is settled" and it is time to "get back to work."  *See* Plf.'s Resp., Ex. 2 at 73.  During this meeting, Spitler commented on Plaintiff's clothing, he testified that he told her:

> You were wearing clothing that is way too tight, way too revealing, your skirts are too short, and you need to tone it down and make it more professional looking.

*Id.*  at 73-74.

On January 25, 2011, Plaintiff notified Scott Spitler that her psychiatrist, Dr.  Rosalind

Griffin, M.D., had placed her on an immediate medical leave of absence due to the "extreme anguish" she felt after her report of sexual harassment. Plaintiff began a Family Medical Leave Act ("FMLA") leave on that day. On March 24, 2011, Dr. Griffin sent Scott Spitler a letter indicating that she and Plaintiff "are in the process of . . . stabilizing the chemotherapy and providing insight toward management of her overwhelming anxiety." *See* Plf.'s Resp., Ex. 15. Dr. Griffin authorized an extension of Plaintiff's medical leave of absence and provided a return-to-work date of April 25, 2011. Plaintiff's permissible leave under the FMLA was set to expire on April 19, 2011. Scott Spitler did not respond to Dr. Griffin's March 24, 2011 correspondence.

Thereafter, on April 7, 2011, Plaintiff sent email correspondence to Lisa Leader, Defendant's Assistant Office Manager, notifying her that she had requested a six-day extension of her medical leave and inquiring whether she was eligible for disability benefits. Leader responded that there were no such benefits, however she failed to address Plaintiff's request for a six day extension to her medical leave. Despite Dr. Griffin's March 24, 2011 letter with a return-to-work date of April 25, 2011, and Plaintiff's request for a six-day extension, Defendant terminated Plaintiff on April 19, 2011. Todd and Scott Spitler considered Plaintiff to have voluntarily terminated her employment because her doctor had not released her to work and she did not return to work after her FMLA leave expired. *See* Plf.'s Resp., Ex. 18; Ex. 1 at 123.

Duley is still employed with Defendant. Since Plaintiff's January 12, 2011 complaint, Defendant has received further reports of Duley's sexual harassment of other female employees. Duley has been reprimanded for this conduct and now treats with a therapist. He has also received two pay raises.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 25, 2011. On November 9, 2011, she filed an additional

charge of retaliation. Both investigations resulted in a determination that there was reasonable cause to believe the allegations were true. Plaintiff received a Right to Sue Letter on October 24, 2012.

## III.    LAW & ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

-7-

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## B.      Hostile Work Environment

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C.§ 2000e-2(a)(1). "A hostile work environment occurs 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Bowman v.  Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)(citing *Harris v.  Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Both an objective and subjective test must be met: The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.*

A court must look to "the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment." *Id.* Isolated incidents, "unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment." *Id.* The factors a court should consider

-8-

"include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Hostile work environment claims are distinguished between "harassment by supervisors and harassment by co-workers." *Blankenship v. Parke Care Ctrs.,* 123 F.3d 868, 872 (6th Cir. 1997). Under Title VII, a plaintiff alleging a hostile work environment claim based on sexual harassment must show that: (1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment created a hostile work environment, and (5) there is a basis for holding the employer liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).

In order to establish a hostile work environment claim under the ELCRA, Plaintiff must demonstrate that: (1) she belongs to a protected group, (2) she was subjected to communication or conduct on the basis of sex, (3) she was subjected to unwelcome sexual conduct or communication, (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment, and (5) respondeat superior. *See Radtke v. Everett*, 442 Mich. 368, 382-83; 501 N.W.2d 155 (1993).

Here, Defendant argues that Plaintiff's hostile work environment claim fails because she cannot establish a basis for holding Defendant liable, or the fifth element required under Title VII and the ELCRA. Since Duley was Plaintiff's co-worker, she can hold Defendant directly liable if she can demonstrate that the employer knew of the offending conduct and the employer's response manifested indifference or unreasonableness. *See Blankenship*, 123 F.3d at 873. In other words, "[w]hen an employer implements a remedy, it can be liable for sex discrimination in violation of

Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." *Id*. To meet the *Blankenship* standard, the remedial action must be "reasonably calculated to end the harassment." *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999).

Defendant asserts that immediately after Plaintiff complained about Duley's sexual harassment, it took remedial action. Scott Spitler promptly spoke with Duley and told him to only discuss work, sports or the weather with his co-workers. The next day, Scott Spitler conducted interviews of other female employees. After discovering that in addition to Plaintiff, Duley had made sexual remarks and unwanted advances to other female employees, he was suspended for a week without pay and his job duties were changed to limit his interaction with Plaintiff. After Plaintiff's complaint and prior to the end of her employment, Plaintiff never again reported any misconduct by Duley. Thus, Defendant maintains that its remedial action was reasonably calculated to end the harassment of Plaintiff and it is entitled to judgment in its favor.

Conversely, Plaintiff maintains that she has presented sufficient facts to establish a question of fact as to whether Defendant's remedy was reasonably calculated to end the harassment. In response to Plaintiff's January 12, 2011 complaint, Duley was questioned for a few minutes. No guidelines were followed, no reports generated, and a one-week suspension was implemented because "more work had to be done." On the day that Plaintiff returned to work, Defendant allowed Duley to sit next to Plaintiff during a meeting.[1] Further, since Plaintiff's January 12, 2011 complaint, Duley has continued to sexually harass women in the office, and Defendant has required that he obtain professional treatment.

---

[1] Defendant disputes this fact since Duley had been suspended from work between January 17, 2011 and January 24, 2011. *See* Def.'s Mot. for Summ. J., Ex. C.

As an initial matter, the Court notes that Plaintiff's evidence concerning the severity and pervasiveness of the harassment does not appear to demonstrate that Defendant's workplace was so "permeated with discriminatory intimidation, ridicule and insult" as to constitute a hostile work environment within the meaning of state and federal law. However, the Court need not resolve this apparent flaw with respect to Plaintiff's hostile work environment claims. Even if Plaintiff had presented sufficient evidence of pervasive harassment to constitute an abusive working environment, she cannot establish a question of fact exists as to whether Defendant's remedial action was reasonably calculated to end the harassment of Plaintiff.

The evidence of record shows that Defendant immediately conducted an investigation, reprimanded Duley, prohibited him from making further harassing comments and overtures, altered his job duties, and suspended his employment for a week without pay. Plaintiff was not further subjected to Duley's harassment. While there is a factual dispute as to whether Plaintiff was required to sit next to Duley during a meeting when she returned to work, Plaintiff does not claim she was subjected to any harassment during the meeting. As in *Blankenship*, this circumstance provides no basis to hold Defendant liable because there was "no misconduct . . . therefore there was nothing to merit further censure by" Defendant. *Blankenship*, 123 F.3d at 874. In any event, Plaintiff did not complain about Duley's seating position during the meeting at any time during the remainder of her employment.

Moreover, Plaintiff cannot rely on the fact that Duley has continued to sexually harass female employees in an effort to demonstrate that Defendant's remedy was not reasonably calculated to end the harassment. Relying on *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008), Plaintiff argues that "where a remedy is ineffectual and the harassment continues, liability will attach." *See* Plf.'s Resp. at 20.

-11-

However, *Hawkins* is distinguishable because the employer had knowledge of a known serial harasser prior to the plaintiff's complaint. *Hawkins,* 517 F.3d at 341. Because the harasser was known to management, the *Hawkins* court concluded that summary judgment was inappropriate because management repeatedly moved the victims to another department, rather than taking more fundamental action such as training, warning or monitoring the serial harasser. *Id*. at 342. The *Hawkins* court reiterated that a factfinder may only consider similar acts of harassment if the "plaintiff becomes aware [of it] during the course of his or her employment . . . ." *Id*. at 336. Unlike the circumstances in *Hawkins*, Plaintiff's complaint was the first time Defendant was made aware of Duley's conduct, thus Duley was not a known "serial harraser." Additionally, *Hawkins* makes it clear that the fact Duley was reprimanded for further sexual harassment after the end of Plaintiff's employment is irrelevant to whether Defendant's remedial action was "reasonably calculated to end the harassment" of Plaintiff.

It appears that Plaintiff believes the only appropriate remedial action was to terminate Duley's employment. "The issue is not whether a plaintiff finds the response . . . satisfactory but whether defendant's response was appropriate.*" Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749 (6th Cir. Sept. 4, 2008). Moreover, "a harassment victim may not dictate an employer's action against a co-worker." *Blankenship*, 123 F.3d at 874. Plaintiff suggests that Defendant's response exhibited indifference because Defendant had no written guidelines for investigating complaints of sexual harassment and Scott Spitler's interviews were short and he failed to take notes during the interviews. However, written guidelines and interview notes are not required if the action taken is reasonably calculated to end the harassment. The record before this Court shows that Defendant's actions were reasonably calculated to end the harassment complained of by Plaintiff. In fact, neither Plaintiff nor any other employees reported further misconduct by

Duley during the remainder of Plaintiff's employment.

Lastly, as previously explained by the Court, Plaintiff cannot rely on Duley's harassment against other female employees a year and a half after Plaintiff was no longer employed with Defendant. As in *Blankenship*, "[a]lthough hindsight shows these measures may not have been sufficient, they were appropriate at the time and easily satisfy the 'good faith' standard" required for remedial action to address Plaintiff's complaint. *Id.*

Accordingly, based on the foregoing, Defendant is entitled to judgment in its favor on Plaintiff's hostile work environment claims.

## C. Retaliation

The analysis for retaliation claims under Title VII and the ELCRA is the same. *See Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). In order to establish a prima facie case of retaliation under either the ELCRA or Title VII, Plaintiff must show that (1) she engaged in protected activity, (2) the Defendant knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there is a causal connection between the protected activity and the adverse employment action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). A causal connection may be proven by either direct evidence or through temporal proximity that creates an inference of causation. *See Randolph* , 453 F.3d at 735 (citing *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363-64 (6th Cir. 2001) ("While it is true that temporal proximity alone is insufficient to establish a causal connection for a retaliation claim, there are circumstances where temporal proximity considered with other evidence of retaliatory conduct would be sufficient to establish a causal connection. ") (internal citations omitted).

If the Plaintiff establishes a prima facie case, the burden of production shifts to the Defendant

-13-

to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011). The Defendant meets its burden by "clearly set[ting] forth, through introduction of admissible evidence," its reasons for the adverse employment action. *Id.* at 815. "If a defendant successfully produces such a legitimate reason, then the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 675 (6th Cir. 2013).

Defendant argues that Plaintiff cannot establish an adverse employment action that is casually connected to her sexual harassment complaint. Defendant directs the Court to the fact that prior to her separation from employment, Plaintiff remained the manager of the Business Development Center. She was not demoted, reassigned, nor was Defendant's conduct in disabling access to certain websites sufficiently severe to amount to retaliation. Defendant argues that Plaintiff still had access to the most used website in her department. Moreover, the fact that Plaintiff was criticized for her attire the day after she raised her complaint does not show retaliation.

Defendant also argues that Plaintiff cannot rely on Scott Spitler's January 24, 2011 comments that she had to "get over it; we need to get back to work" and that she should have told Duley to "f**k off," because there is nothing unlawful about these remarks which, in any event, were not so pervasive and severe to alter the conditions of her employment. Lastly, Defendant suggests that Plaintiff has failed to come forward with any evidence suggesting that her employment was terminated because she complained about Duley's sexual harassment to Defendant and the EEOC.

Here, the Court finds that Plaintiff has met her burden demonstrating the existence of factual issues for trial. Plaintiff engaged in protected activity by reporting sexual harassment to Defendant

-14-

and the EEOC.  *See Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 469 (6th Cir. 2012).  It is undisputed that Defendant was aware of her complaints.  Further, Defendant's argument that Plaintiff cannot demonstrate an adverse employment action is wholly without merit. Defendant's characterization of Plaintiff's separation from employment as anything other than a termination is disingenuous.  Plaintiff did not advise Defendant of an intent to quit her job, rather she made a request to return to work six days after her leave expired.  Defendant failed to respond to her inquiry without any explanation.

Finally, there are questions of fact as to the causal connection between Plaintiff's complaint and the adverse employment action.  After Plaintiff reported Duley's conduct, she was admonished for her clothing and her computer access was restricted.  While Defendant claims that her access was disabled because Todd and Scott Spitler were uncertain if she would return to work and company policy requires that access be restricted under such circumstances, a reasonable jury could conclude that Defendant's actions were mere pretext for discrimination.  The alleged policy is not in writing, and Plaintiff never indicated that she planned to quit her job.

Additionally, there is a factual dispute concerning when Plaintiff's website access was restored and whether disabling access to the websites actually adversely affected her ability to perform her essential job functions.  Moreover, Plaintiff's job performance had never been criticized, and she had no attendance issues.  As such, Defendant's failure to respond to her request to return to work on April 25, 2011 could be construed as pretext for unlawful discrimination. Defendant terminated Plaintiff even though there is no evidence that she was anything other than an exemplary employee, who recently lodged a sexual harassment complaint against one of her co-workers.  Thus, the temporal proximity between the complaint and her termination, coupled with the criticism of her wardrobe, disablement of her computer access, and failure to respond to her

-15-

request for a six day extension to her medical leave are enough to create an inference of causation. *See Randolph*, 453 F.3d at 735 (concluding that the timing of the plaintiff's complaint and termination, coupled with the fact that she had been subjected to rumors accusing her of inappropriate behavior, as well as subjected to two investigations concerning her behavior was sufficient to satisfy the third prong of the plaintiff's *prima facie* burden); *see also Little*, 265 F.3d at 363-64.

Based on the foregoing considerations, questions of fact exist for trial on Plaintiff's retaliation claims under Title VII and the ELCRA. Defendant is not entitled to judgment in its favor on these claims.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [#40] is GRANTED IN PART and DENIED IN PART. Counts I and III are dismissed. Counts II and IV remain.

SO ORDERED.

Dated: February 12, 2014                    /s/Gershwin A Drain
                                            GERSHWIN A. DRAIN
                                            UNITED STATES DISTRICT JUDGE

-16-